GEORGE H. FRASER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5929. Promulgated April 25, 1927.

No entry was made on the books of account charging off an amount due from a citizen and resident of an enemy country due to the belief of the petitioner that to make such an entry would be to extend credit to such enemy in violation of law. Such account was eliminated from the balance sheet and from credit statements. *Held*, that under a reasonable construction of the Revenue Act such debt had been charged off.

*Almet Reed Latson, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

The petitioner appeals from the determination by the Commissioner of a deficiency of $1,791 in income tax for 1920 and from the rejection by the Commissioner of a claim for refund of $29,458.29 income tax for 1919. He alleges as error the refusal of the Commissioner to permit the deduction of a debt which he asserts was ascer-

tained to be worthless and charged off during 1919, or, in the alternative, in 1920.

FINDINGS OF FACT.

George H. Fraser, the petitioner, is a resident of the Borough of Brooklyn, City and State of New York, and now is, and during 1919 and 1920 was, engaged in business under the trade name of Kent Mill Co. The petitioner has been so engaged in business for upwards of thirty years. The petitioner's business is the manufacture of machinery including what is known as a Kent mill, a machine for pulverizing granite and rock for cement. The Kent mill was a patented device, the patents for which were owned by the petitioner. These mills were massive and cost about $2,500 each.

In or about the year 1905, the petitioner made a contract with one Curt Von Greuber, a resident and citizen of Berlin, Germany, under the terms of which the petitioner thereafter sold to Von Greuber mills manufactured by the petitioner under the patent above described.

The purchase price of said mills was payable by Von Greuber in American dollars or their equivalent in German marks.

Von Greuber maintained his office in Berlin, Germany, and also maintained a separate office in England. Shipments were made by the petitioner to Von Greuber in Germany and to such other points in Europe as Von Greuber directed, some shipments being made directly to the customers of Von Greuber. Von Greuber's activities were largely outside of Germany and relatively few of the machines were sold in Germany. The machines were shipped complete in some cases and knocked down in others. Von Greuber maintained a stock of complete machines, parts, and accessories at various points. When sales were made, the terms of sale were entirely within the discretion of Von Greuber, the petitioner looking to him alone for compensation. Shipments to Von Greuber averaged from ten to thirty machines a year.

At the inception of the relations, payments for machines were made rather promptly but later payments became somewhat slower and at the time of the outbreak of the war between Great Britain and Germany in 1914, Von Greuber was indebted to the petitioner in the sum of $119,910.82 for machines and parts which had been theretofore shipped to him. The last shipment was made in 1913.

At the time of the outbreak of the war, the petitioner was in receipt of a letter from Von Greuber indicating that the business was still continuing with good and sound orders for more than $250,000, that Von Greuber had enlisted in the German army and that he had appointed one Hansen, a Norwegian subject, as general director of his business.

Thereafter and on October 24, 1914, the petitioner received a communication from Hansen to the effect that one Walker, an employee of Von Greuber in charge of the English branch of Von Greuber's business, had taken over the English assets and intended to conduct the business in his own name for his own account. The letter charged that Walker was unreliable. This was the first indication that the petitioner had received that Von Greuber had suffered a loss of any assets of his business.

Thereafter and on February 14, 1915, the petitioner received a further communication from Von Greuber indicating that it was doubtful how much longer the business could be kept going and containing a suggestion that the petitioner reduce his account by at least 50 per cent and provide for payments in installments. Von Greuber stated that if this could be done he probably could interest new capital in the venture. This letter indicated the prevalence of propaganda in the German industries against American capital and American products. The petitioner did not accept the proposition.

From time to time thereafter the petitioner received from various sources information as to German industrial conditions, the existence of an embargo which prevented Von Greuber from shipping machines outside of Germany and the general restriction of industrial enterprises.

Thereafter and in the year 1917 Hansen, the general director of Von Greuber's business, called upon the petitioner at his office in New York and told him that unless the petitioner was willing to advance the sum of $20,000 the Von Greuber concern would be unable to carry on. He advised the petitioner that the Von Greuber factory was mortgaged and that the concern itself was heavily in debt and that they had no money with which to meet their obligations. The proposed advance was not made by the petitioner.

On June 28, 1919, the treaty of Versailles was signed, imposing heavy burdens upon Germany. In July, 1919, petitioner wrote Von Greuber asking how he was and how he was situated.

In reply the petitioner received a letter dated August 12, 1919, in which it was stated that Von Greuber was a prisoner of war, that it was doubtful how much longer they could keep the business going and that Hansen was trying to get orders. No further orders were ever received by the petitioner. This particular branch of the petitioner's business was abandoned and no efforts have been made since that time to reinstate it.

No further incident transpired until the latter part of 1920 when the petitioner received a call from Hansen. Hansen advised the petitioner that Von Greuber's business had "gone to pot," that he had

lost his plant and was engaged in engineering, and that he was hardly able to make a living.

In 1916 the petitioner made a financial statement to the Carnegie Steel Co. in which he included the Von Greuber account as a part of his assets. These statements were made about every three years. In June, 1919, shortly before the signing of the treaty of Versailles, the petitioner received a communication from the Carnegie Steel Co. requesting a further financial statement. For the purpose of making up this statement, the petitioner took from his books a statement of the debts and liabilities in the form of pencil memoranda and the Von Greuber account was eliminated from this memorandum by the petitioner by a line drawn through it. The word "out" was written on the margin of the memorandum opposite this item. The financial statement was given to the Carnegie Steel Co. in July, 1919, from which the Von Greuber account was eliminated.

In answer to a request by the Brier Hill Steel Co. in September, 1920, the petitioner furnished a financial statement. The Von Greuber account was not included as an asset in this statement.

The petitioner during all this time made no entries upon his books of account with reference to the Von Greuber item because of his belief that in so doing he would be violating the provisions of the "trading with the enemy act," and that marking the same off upon his books was equivalent to giving credit to an enemy. The Von Greuber item was not deducted upon the petitioner's report for the year 1919 because under the statute he thought it would be necessary to make physical entries in his books in order to charge the same as a bad debt and this the petitioner did not feel free to do. The Von Greuber account was never claimed by the petitioner as a deduction upon any report subsequent to 1919 or 1920 nor has he at any time received any credit for it. No attempt was made to charge off the Von Greuber account after 1919 because of the petitioner's firm opinion that his loss had occurred in that year. The petitioner felt free to eliminate the account from his financial statements because that could be accomplished without physical entries upon his books and for the further reason that, as he viewed it, it did not involve a transaction with an enemy.

On March 27, 1924, the petitioner made an entry upon his journal charging the Von Greuber item of $119,910.82 to profit and loss account as of December 31, 1919. Thereupon the petitioner applied for leave to file an amended return for the year 1919 embodying the Von Greuber deduction.

The petitioner filed his tax return for the year 1919 showing a taxable net income of $96,742.35, and a taxable liability of $29,458.29. Upon the reaudit by the Commissioner, the return was approved as

filed. The petitioner likewise filed an income-tax return for the year 1920 showing a taxable net income of $104,749.79 and a tax liability of $34,119.87. Upon a reaudit the Commissioner determined an increase in taxable income of $2,985 and an additional assessment of $1,791 for 1920. On neither of these did the petitioner claim as a deduction the debt here in question. A claim for refund of 1919 tax was filed claiming such debt as a deduction in that year or in 1920. Such refund was denied and no deduction was allowed by the Commissioner for either year. Notice of the rejection of the claim for refund of 1919 taxes was mailed by the Commissioner to the petitioner on the same date as the letter notifying petitioner of the deficiency for 1920. The petitioner purports to appeal from the determination for both years.

OPINION.

Phillips: The Commissioner has moved to dismiss the appeal, so far as it relates to 1919, for want of jurisdiction in the Board to hear and determine the proceeding. The Commissioner has determined no deficiency for that year. He has denied the petitioner's claim for refund and permitted the tax liability to remain as shown on the return filed. In such circumstances we have no jurisdiction of the proceeding, under the Revenue Act of 1926, whatever may have been the situation under the Revenue Act of 1924. Section 274 (g) of the Revenue Act of 1926; *Appeal of R. P. Hazzard Co.*, 4 B. T. A. 150; *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255. The proceeding will be dismissed as to that year.

It is the contention of the petitioner that the indebtedness of Von Greuber was ascertained to be worthless in 1919, in which year the treaty of Versailles was executed, imposing heavy burdens upon Germany and German industries. He had learned in 1915 and 1917 that his debtor was in financial difficulties but at the time the treaty was signed had no more definite knowledge of the financial condition of his debtor than in 1917 when he was advised that if he could not advance $20,000, the business of Von Greuber, which was heavily indebted, could not survive. What had happened in the meantime was to him only a matter of conjecture. Shortly after the treaty was signed he wrote Von Greuber and learned that although he was a prisoner of war, his business was still being carried on, although it was doubtful how much longer it could survive. No further investigation was made to determine the precise financial condition of the debtor. We do not conceive that in such circumstances it can be said that the debt was ascertained to be worthless in that year within the meaning of the Revenue Act.

While the debt is to be deducted in the year in which the taxpayer ascertains its worthlessness, and some discretion must be given him

to act within sound business judgment, it is our opinion that the information in his possession in 1919 was insufficient upon which to ascertain either worth or worthlessness.   In 1920, however, petitioner learned that Von Greuber's plant had been sold under foreclosure, that his property had been taken to pay his debts, and that he was earning a precarious living in engineering.   This constituted sufficient information of the situation of his debtor upon which to act. We have accordingly reached the conclusion that it was in 1920 that the debt was ascertained to be worthless.

The statute, however, requires that the debts shall not only be ascertained to be worthless, but that they shall be " charged off within the taxable year."   The statute is silent as to how or where or in what manner they are to be charged off.   If no books are kept, where is the charge-off to be made?   If books are kept, must it be done by an entry on the books?   Here it is conceded that books were kept and that no charge-off was made thereon until 1924 when the entry was made as of 1919.   This entry, made several years after the taxable year involved, and after the books for that year had been closed, seems to us clearly insufficient to meet the requirements of the statute.   The only other act to consider was the elimination of the account from the financial statement.   While this was first done in 1919, it would seem that under some circumstances a charge-off in a prior year may satisfy the statute, since in such case nothing remains to be charged off within the taxable year.   See *Appeal of Mason Machine Works Co.*, 3 B. T. A. 745.

The purpose of the statute appears to be to require that some record be made of the ascertainment of worthlessness.   An interpretation of the statute which would deny any deduction except when a charge-off was made upon books of account within the limits of the calendar year, especially when it is considered that closing entries are not usually made until after the close of the year, would work a hardship which we can not believe was intended or is required and would attach to acts which are merely clerical an importance as great as is to be given to the substance of the situation.   The statute must be given a reasonable interpretation, if possible.   Clearly it was the intent that a deduction should be allowed for worthless debts in the year in which worthlessness was ascertained and that the charging off of the debt might take other forms than entries on the books of the taxpayer.   *Milling Moore Mercantile Co.* v. *Commissioner*, 5 B. T. A. 1060.   We are of the opinion that the petitioner met the requirements of the statute when he eliminated the account from his financial statements and that he is entitled to the deduction in 1920.

*Decision will be entered on 10 days' notice, under Rule 50.*